IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| KENDRICK A. REDMON and | ) | |
| STEPHANIE REDMON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CASE NO. 3:05-CV-387-WKW |
| v. | ) | (WO) |
| | ) | |
| SOCIETY AND CORPORATION | ) | |
| OF LLOYDS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kendrick A. Redmon ("Redmon")[1] was a professional football player whose professional career ended in 2001. During his career, he was insured under two disability insurance policies issued through the Lloyd's of London marketplace by an underwriter syndicate. This suit arises out of Certain Underwriters of Lloyd's and in London and Petersen International Underwriters, Inc.'s refusal to pay the disability claims. This cause is before the Court on twelve motions.[2] The motions to stay and compel arbitration (Docs. # 4, 6, and 46) filed by Certain Underwriters at Lloyd's and in London ("Certain Underwriters"); Michael B. Petersen; Petersen International Underwriters, Inc. ("Petersen International"); Carney Gleason & Carney, Ltd., d/b/a International

---

[1] Although the complaint is brought by Kendrick A. Redmon and his wife, Stephanie Redmon, the gravamen of the claims relate to Kendrick A. Redmon. Thus, for convenience, Kendrick A. Redmon is referenced when discussing the claims asserted in this lawsuit.

[2] For the sake of economy, discussion and analysis, all pending motions, responses and replies are listed in Appendix A to this Memorandum Opinion and Order. Motions requiring discussion will be identified in the text of the opinion.

Risk Management Group ("IRMG");[3]  Rehabilitation Alternative Services, Inc. ("RAS") (hereinafter collectively the "State Court Defendants"); and Society and Corporation of Lloyd's ("Lloyd's") are due to be granted.  The Motion to Dismiss Individual Defendants Added Via the Fourth Amended Complaint (Doc. # 48) filed by Peter Levene, Nick Pettejohn, Julian Avery, Steven Burns, Stephen Catlin, John Coldman, Sean Dalton, Christine Dandridge, Quentin Davies, Judith Hanratty, Bill Knight, Philip Lader, Bronek Masojadas, Peter Morgan, Charles Philipps, Brian Pomeroy, Andreas Prindl, and David Shipley ("Council Members") is due to be granted.  A collateral Rule 11 sanctions motion filed by Redmon against the State Court Defendants is also before the Court and is due to be denied.

## I.    PROCEDURAL HISTORY

Redmon originally filed this case in the Circuit Court of Lee County against Certain Underwriters; Michael B. Petersen; Petersen International; Peter Kolesar;[4] The Chittenden Group;[5] IRMG; and RAS.  The case was removed to federal court on April 26, 2005; simultaneously, Certain Underwriters; Michael B. Petersen; Petersen International; IRMG; and RAS, the State Court Defendants, filed a Motion to Stay Proceedings (Doc. # 4) and Motion to Compel Arbitration (Doc. # 6).  After issues regarding the motions to stay and compel arbitration were fully briefed, a Motion for Evidentiary Hearing (Doc. # 36) was filed by Redmon.  Relatedly, but not chronologically,

---

[3]  Originally incorrectly referred to by Redmon as "Boener Carney & Gleason, Ltd., d/b/a International Risk Management Group."

[4]  Peter A. Kolesar is an independent insurance agent.  Mr. Kolesar used the wholesale services of The Chittenden Group to find Redmon's disability policies.  Apparently, The Chittenden Group provided the policies of Petersen International and Certain Underwriters to Mr. Kolesar and Redmon.  (Doc. # 15 p. 4).  Peter Kolesar was omitted from the Fourth Amended Complaint and is no longer a party to this law suit.

[5]  The Chittenden Group was dismissed with prejudice by Redmon on May 9, 2006.  (Doc. # 72).

Redmon filed a Motion for Sanctions (Doc. # 69), in response to the State Court Defendants' Corrected Reply Brief in support of its motion to compel arbitration, which was followed by Redmon's Motion to Strike Exhibit (Doc. # 79).

On August 5, 2005, Redmon filed his Fourth Amended Complaint (Doc. # 38) adding eighteen individual defendants ("Council Members") and negligence clams against Society and Corporation of Lloyd's ("Lloyd's"). In response to the Fourth Amended Complaint, Lloyd's filed its Motion to Compel Arbitration (Doc. # 46) and the Council Members filed a Motion to Dismiss (Doc. # 48), which were fully briefed.

For reasons to be discussed, the Motion to Dismiss Council Members (Doc. # 48) is due to be granted. The Motion to Stay Proceedings (Doc. # 4) and Motion to Compel Arbitration (Doc. # 6) filed by the State Court Defendants are due to be granted. Lloyd's Motion to Compel (Doc. # 46) is due to be granted. Redmon's Motion to Strike Exhibit (Doc. # 79) and the Motion for Sanctions (Doc. # 69) are due to be denied. All other motions are due to be denied as moot.

## II.    FACTS

For the sake of clarity, the facts are separated into two sections. The first section includes facts relevant to the arbitration issue. The second section sets forth facts relevant to the Council Members' motion to dismiss for lack of personal jurisdiction.

A.    *Arbitration Facts*

Redmon was a professional football player in the National Football League from 1995 to 2001. His career ended with the Atlanta Falcons. While playing for the Falcons, Redmon purchased two disability insurance policies through Petersen International and Certain Underwriters. The amount of these policies totaled $1,000,000 in disability coverage, to be paid to Redmon in the

3

event that he sustained career-ending injuries.  The policies contained an exception for injuries to

Redmon's right knee. Both policies contained the following arbitration clause:

> BINDING ARBITRATION: Not withstanding any other item set forth herein, the parties agree that any dispute which arises shall be settled in Binding Arbitration.  By agreeing to Binding Arbitration, all parties acknowledge and agree that they waive their right to a trial by jury.  Binding Arbitration will be held before a neutral arbitrator who will be agreed to by all parties.  If the parties cannot agree as to the arbitrator, or believe that a single arbitrator cannot adequately settle the dispute, then an arbitration panel made up of three arbitrators shall be formed.  One arbitrator shall be appointed by Us. The second arbitrator shall be appointed by You.  The third arbitrator shall be agreed by the two appointed arbitrators.  The venue shall be in Los Angeles County or at another location if agreed by all parties. The arbitration will be governed by the commercial arbitration rules of the American Arbitration Association.  Costs for the arbitration shall be equally split among all parties.

According to Redmon, he was released from the Falcons in 2001 due to injuries he sustained to his

right knee and left shoulder.  He alleges that it was the shoulder injury requiring surgery that ended

his professional career.

Petersen International and Certain Underwriters hired two third party companies to

investigate the injuries to Redmon - IRMG and RAS.  On separate occasions IRMG and RAS

conducted independent medical examinations of Redmon.  Pursuant to the investigations of IRMG

and RAS, Redmon's disability claims were denied.  The failure to pay the disability claims has

resulted in this litigation.

There are factual disputes between the parties regarding Redmon's injuries, his subsequent

medical treatment, and Certain Underwriters and Petersen International's responsibilities with regard

4

to Redmon's insurance policies.[6]  However, there is no dispute as to the existence of an arbitration agreement between Certain Underwriters, Petersen International and Redmon.  Moreover, it is undisputed that Lloyd's, IRMG and RAS are not signatories to the arbitration agreements between Redmon, Certain Underwriters and Petersen International.

The State Court Defendants and Lloyd's seek an order from this Court compelling arbitration and staying all claims pending the outcome of arbitration.  Redmon denies that all of his claims are subject to arbitration.  Further, he seeks an evidentiary hearing on alleged misrepresentations to this Court by the State Court Defendants, as well as Rule 11 sanctions against the State Court Defendants.

B.   *Jurisdictional Facts - The Council Members*

Redmon filed his Fourth Amended Complaint on July 14, 2005, which sought to add claims against the Council Members in their "official capacities as members of the Council" of Lloyd's.[7] The Council of Lloyd's promulgates "byelaws," regulates the market, and generally controls Lloyd's administrative and service functions.  The council has no authority to collect or manage premiums or adjust claims.

Lloyd's is not an insurance company.  Rather, "it provides premises and other support services to a unique and complex international insurance market of members, i.e. the Lloyd's Market."  (Doc. # 49 Ex. 19 ¶ 5).  Lloyd's does not operate for a profit, but instead seeks to cover

---

[6]  On July 25, 2005, Redmon filed "Plaintiff's Motion for Evidentiary Hearing" (Doc. # 29) alleging that the State Court Defendants made "completely false representations and fabrications designed to mislead the Court" in their Reply Brief (Doc. # 26).  The primary factual issue raised in the motion is whether the policies at issue were in force.  Redmon insists the representation by the State Court Defendants was not made in good faith, and his Motion for Sanctions (Doc. # 69) under Rule 11 relates to those issues.

[7]  Council members are similar in function to a board of directors or trustees.

its expenses through entrance and subscription fees charged to participate in the Lloyd's Market. Lloyd's does not collect premiums for itself or on behalf of others, nor does it manage premium payments collected for specific insured risks. Lloyd's does not process, manage or pay claims on insurance policies.

Seventeen of the eighteen Council Members are residents of the United Kingdom. The remaining individual, Phillip Lader, is a resident of South Carolina and has never been physically present in Alabama. None of the Council Members named in the Fourth Amended Complaint have an interest in real property in Alabama. None of the Council Members ever lived in a marital relationship in Alabama or had any obligations arising from alimony, custody, child support, or property settlement in Alabama. Only two of the Council Members, David Shipley and Stephen Catlin, have ever been to Alabama. Shipley and Catlin never conducted personal business in Alabama; their sole contact arose as a result of actions as agents for employers in matters unrelated to this litigation.

### III.   JURISDICTION AND VENUE

This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332 and § 1441(a). The amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the plaintiffs and defendants. The parties do not dispute subject matter jurisdiction or venue. The Court finds an adequate evidentiary basis for both. _____

### IV.   STANDARD OF REVIEW

A.   *Personal Jurisdiction*

Pursuant to Alabama law, because the Council Member defendants raised an objection to personal jurisdiction, the burden to establish personal jurisdiction is on Redmon. *Oliver v. Merritt*

6

*Dredging Co.*, 979 F.2d 827, 830 (11th Cir. 1992), *cert denied*, 507 U.S. 983 (1993).  To meet his burden, Redmon "need only establish a prima-facie case of jurisdiction, and may do so by presenting evidence sufficient to defeat a motion for judgment as a matter of law. . . . "  *South Alabama Pigs, LLC, v. Farmer Fenders, Inc., et al*, 305 F. Supp. 2d 1252, 1257 (M.D. Ala. 2004).  Thus, Redmon must provide "legally sufficient evidence . . . to create a genuine issue of material fact. . . . [and] the court . . . must take all allegations of the complaint that the defendant does not contest as true, and, where the parties' affidavits conflict, the court must construe all reasonable inferences in favor of the plaintiff[s]."  *Id.*

B.    *Arbitration*

The Federal Arbitration Act ("the FAA") makes enforceable a written arbitration provision in a "contract evidencing a transaction involving commerce."  9 U.S.C.A. § 2.  "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements."  *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).  The legislative history makes clear that the purpose of the FAA was to overcome long-standing judicial hostility to arbitration agreements, and to enforce such agreements.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 n.14 (1985); *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 219-20 (1985).  The FAA provides that, if a lawsuit in federal court has been brought "upon any issue referable to arbitration under an agreement in writing for such arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C.A. § 3.  The FAA also provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another party to arbitrate under a written agreement for arbitration may petition [the court] . . . for an order directing that such arbitration

7

proceed in the manner provided for in such agreement."  9 U.S.C.A. § 4.  Section 4 further provides

that, "upon being satisfied that the making of the agreement for arbitration or the failure to comply

therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration

in accordance with the terms of the agreement."  *Id*.

As a general matter of federal policy, "where the contract contains an arbitration clause, there

is a presumption of arbitrability in the sense that an order to arbitrate a particular grievance should

not be denied unless it may be said with positive assurance that the arbitration clause is not

susceptible of an interpretation that covers the asserted dispute."  *AT & T Tech., Inc. v.

Communications Workers of Am.*, 475 U.S. 643, 651 (1986) (internal quotations omitted); *see also

Ruby-Collins, Inc. v. City of Huntsville, Ala.,* 748 F.2d 573, 576 (11th Cir. 1984) ("[F]ederal policy

requires that we construe arbitration clauses generously, resolving all doubts in favor of arbitration").

Despite this presumption favoring arbitration, the FAA prohibits the enforcement of an arbitration

clause that is invalid "upon such grounds as exist at law or in equity for the revocation of any

contract."  9 U.S.C.A. § 2.  Section 2 "gives States [] method[s] for protecting consumers against

unfair pressure to agree to a contract with an unwarranted arbitration provision."  *Allied-Bruce

Terminix v. Dobson*, 513 U.S. 265, 281 (1995).  The court must look to the intent of the parties to

determine which claims are arbitrable, and in so doing, the court looks to the wording of the

arbitration clause and gives all provisions of the contract their full effect.  *See Bullock v. United

Benefit Life Ins. Co.,* 165 F. Supp. 2d 1259, 1261 (M.D. Ala. 2001).

While federal policy favors arbitration, "arbitration is a matter of contract and a party cannot

be required to submit to arbitration any dispute which he has not agreed so to submit."  *Steelworkers

v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960).  Accordingly, "[t]he question whether the

parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT & T Tech., Inc.*, 475 U.S. at 649). Issues to be decided by the court "include certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003). As a general rule, when considering these "gateway issues," a court "may consider only issues relating to the making and performance of the agreement to arbitrate," and not issues relating to the making of the contract generally. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967); *John B. Goodman Ltd. P'ship v. The Constr. Co.*, 321 F.3d 1094, 1095-96 (11th Cir. 2003).

## V.   DISCUSSION

At the outset, it is helpful to summarize the issues generally. Personal jurisdiction over the Council Member defendants and examination of the arbitration clause as to the State Court Defendants and Lloyd's are gateway issues that ultimately govern this Court's future involvement in the case, and will be discussed first. The arbitration issue requires examination of gateway questions of validity and enforceability of the arbitration clause in the contracts of insurance. Not involved in the present discussion are questions of the nature and extent of injuries to Redmon, whether a policy expired for non-payment of premium,[8] whether a particular doctor was in fact employed by the Falcons, whether a chiropractor is technically a physician, whether "shoulder stiffness" means "left shoulder injury," and the like. If and only if the Court finds that arbitration

---

[8] It is undisputed that the policies existed and that they contained arbitration clauses.

9

is not required under the relevant documents and law would these issues be before the Court for resolution. If the case is arbitrable, these issues will be addressed by the arbitration panel.

A.    *Personal Jurisdiction over the Council Members*

The Council Members move the court to dismiss the action against them for lack of personal jurisdiction. Redmon's burden in response is to "establish that personal jurisdiction over the defendant[s] comports with (1) [Alabama's] long-arm statute and (2) the requirements of the due-process clause of the Fourteenth Amendment to the United States Constitution." *South Alabama Pigs*, 305 F. Supp. 2d at 1257. Alabama's long-arm statue authorizes the assertion of personal jurisdiction to the limits of the United States Constitution. *See* Ala. R. Civ. P. 4.2(b). Accordingly, Redmon's burden requires proof that personal jurisdiction over each of the eighteen individual Council Members meets the requirements of federal due process.

Due process requires: (1) that the defendant have "certain minimum contacts" with the forum state, and (2) if such minimum contacts exist, that the exercise of jurisdiction over the defendant "'does not offend traditional notions of fair play and substantial justice.'" *Burnham v. Superior Crt. of California, County of Marin*, 495 U.S. 604, 618 (1990) (quoting *International Shoe Co. v. State of Washington, Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). Because Redmon fails to establish that sufficient minimum contacts exist as to any of the Council Members, the second due process prong is not addressed.

Two types of contacts can form a basis for personal jurisdiction: general contacts and specific contacts. "General contacts, which give rise to general personal jurisdiction, consist of the defendant's contacts with the forum state that are unrelated to the cause of action and that are both 'continuous and systematic.'" *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408,

414 n.9, 415 (1984) (citations omitted).  To establish general jurisdiction, the contacts must also be sufficiently "substantial."  *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446-47 (1952). On the other hand, specific contacts giving rise to specific jurisdiction consists of the defendant's contacts with the forum state that are related to the cause of action.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-75 (1985).

In the instant transactions, the Council Member defendants did not individually or collectively engage in any activity subjecting them to general or specific personal jurisdiction in Alabama.  Sixteen of the eighteen Council Members have never been to Alabama.  The other two Council Members have only been to Alabama once, as an agent in an unrelated matter.  None of the Council Members' contacts with Alabama are sufficient to be deemed "continuous and systematic" such that the Council Members reasonably anticipated being haled into Alabama courts.

Straining to extend the reach of this Court, Redmon relies upon Lloyd's contacts with the forum in order to subject the individual Council Members to personal jurisdiction in Alabama. However, a court cannot exercise personal jurisdiction over a defendant solely on the basis of an employer's contacts with the forum.  *Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389, 391-92 (11th Cir. 1988); *see also Painewebber, Inc. v. Chase Manhattan Private Bank (Switz.)*, 260 F.3d 453 (5th Cir. 2001).  Moreover, "[a]n officer who has never been in Alabama nor conducted personal business in the state through an alter ego or through personal agents, may not be subject to jurisdiction in Alabama."  *South Alabama Pigs*, 305 F. Supp. 2d at 1260.[9]  Due to the business structure of Lloyd's of London, a connection between the Council Members and Alabama is even

---

[9] *See also Thames v. Gunter-Dunn, Inc.*, 373 So.2d 640, 642 (Ala. 1979) (stating that "[u]nless there is evidence that [an] act by [a] corporate officer was other than as an agent for the corporation, then personal jurisdiction over the corporate officer will not lie.").

more tenuous.

Redmon fails to establish a *prima facie* case of personal jurisdiction over the eighteen Council Members.  Thus, the Council Members' Motion to Dismiss is due to be granted.

B.   *Arbitration Issues Related to Certain Underwriters and Petersen International.*

1.   *Arbitrability*

Redmon's central argument in the original motion motion for an evidentiary hearing, the supplemental motion for an evidentiary hearing and supplemental brief for an evidentiary hearing is that questions of arbitrability exist in this case that require a judicial determination by this Court. (Docs. # 30 p. 9;  36 ¶ 1; and 41 p. 1).  Redmon fails to identify, however, any basis whatsoever to raise a question of arbitrability.

The Supreme Court addressed the issue of questions of arbitrability at length in *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002).  The Court explained how the term question of arbitrability ought to be defined:

> Linguistically speaking, one might call any potentially dispositive gateway question a "question of arbitrability," for its answer will determine whether the underlying controversy will proceed to arbitration on the merits. The Court's case law, however, makes clear that, for purposes of applying the interpretive rule, the phrase "question of arbitrability" has a far more limited scope . . . . The Court has found the phrase applicable in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.

*Id.* at 83-84.  In this case, Redmon points to no evidence to suggest that the parties did not agree to arbitrate all disputes arising out of the two disability insurance policies purchased by Redmon.

12

Redmon first argues that, because there is a factual dispute regarding whether both policies were in force at the time Redmon filed his claims, the Court should resolve this question before reaching the question of whether to compel arbitration.[10]   The Court in *Howsam* notes that there are certain 'gateway' procedural matters that it is presumed an arbitrator will decide, including defenses such as waiver, delay, notice, laches, and estoppel, etc.  *Id*. at 85.  Any factual question in the present case involving whether the policies were in effect at the time of Redmon's claims falls into the 'procedural gateway' category as a question to be resolved by the arbitrator.  *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1109 (11th Cir. 2004) ("Arbitrators . . . are empowered, absent an agreement to the contrary, to resolve disputes over whether a particular claim may be successfully litigated anywhere at all (due to concerns such as statute of limitations, laches, justiciability, etc.), or has any substantive merit whatsoever.").  *See also Rollins, Inc. v. Foster*, 991 F. Supp. 1426, 1431 (M.D. Ala. 1998) ("*Prima Paint*'s mandate is that challenges to the validity of the contract as a whole must be presented to the arbitrator.").   The factual question of whether or not one of Redmon's insurance policies was in effect at the time he filed a claim, therefore, is not a 'gateway' question for the court to decide; rather, it is a dispute for the arbitrator to resolve.

In addition, Redmon asserts that there are other disputed facts in this case which should be resolved at an evidentiary hearing.  While it is true that Redmon and the State Court Defendants have included numerous disputed facts in their various motions relating to arbitration, the Court is not persuaded that any of these disputed factual matters are pertinent to the question of whether or not Redmon's claims should be subject to arbitration.  These factual disputes are precisely the issues that

---

[10]Redmon argues, indeed, must prove, that the Policies *were* in force.  He has offered no explation why the arbitration clause should be severed from the contracts upon which he must rely to succeed in his claims.

13

should be decided by an arbitrator.

Next, Redmon contends that the Court should hold an evidentiary hearing because his Complaint, as amended, contains a claim of Trover and Conversion (Count VI, Fourth Amended Complaint), and that this claim is not subject to arbitration.  The claim essentially re-states Redmon's position that Certain Underwriters and Petersen International refused to pay Redmon's claims under two disability insurance policies, and asserts that this constitutes conversion.  However, Redmon offers no rationale and cites no case law to support the position that this claim is not subject to arbitration, stating only that Certain Underwriters and Petersen International "cannot reasonabl[y] argue that such a claim is contemplated to be subject to the arbitration provision."  (Doc. # 30 p. 9). On the contrary, this cause of action relates to a dispute arising out of the Policies.  Given the federal policy in favor of arbitration, *see AT & T Tech., Inc.*, 475 U.S. at 651, and given the parties' agreement to arbitrate "any dispute," this Court finds that the opposite is true: All parties reasonably contemplated that a dispute over payment of claims might arise, and this is precisely the type of dispute which the parties have agreed to arbitrate.

Redmon's final argument is that the Court should hold an evidentiary hearing because Count V of the Complaint, seeking a declaratory judgment, places "questions of arbitrability" before the Court.  The Court recognizes that this declaratory judgment claim seeks clarification as to the validity of the arbitration clause itself, meaning the claim fits within the *Howsam* court's definition of "gateway issues."  *See Howsam*, 537 U.S. at 84 ("Thus, a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide.").  To support this position, Redmon asserts that a "service of suit" clause also contained in the policies is in conflict with the arbitration clause, and that the service of suit clause should control.

14

This clause provides that "[i]n the event of the failure of Underwriters to pay any amount claimed to be due under the insurance described herein, Underwriters have agreed that . . . they will submit to the jurisdiction of a court of competent jurisdiction within the United States."  (Doc. # 15 p. 7).

In support of his argument that this clause controls over the arbitration clause, Redmon relies primarily on *Boghos v. Lloyd's of London*, 109 Cal. App. 4th 1728, 1 Cal. Rptr. 3rd 447 (Cal. App. 6th Dist. 2002), a California Court of Appeals case which found that the plain language of a similar service of suit clause trumped an arbitration clause found in the same contract, thereby defeating the arbitration clause.  At the time Redmon submitted the brief in which he relied upon this case, it was pending before the California Supreme Court.  Recently, the California Supreme Court reversed the appellate court's holding in the case thereby enforcing an arbitration clause identical to the one here. *See Boghos v. Certain Underwriters at Lloyd's of London, et al.*, 36 Cal. 495, 115 P.3d 68 (Cal. 2005).

Certain Underwriters and Petersen International argue that the service of suit clause contained in the two policies is nothing more than a waiver of any objections to personal jurisdiction asserted over them by a U.S. court; this is included in the policies because Certain Underwriters are based in England.  Certain Underwriters and Petersen International cite case law from multiple state and federal courts holding that a service of suit clause is not inconsistent with an arbitration clause.  The clear weight of authority rests with Certain Underwriters and Petersen International's interpretation, and the Court finds this argument more persuasive.  *See Montauk Oil Transp. Corp. v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.*, 79 F.3d 295, 298 (2d Cir. 1996) ("The principal effect of the [service of suit clause] is to resolve the issue of personal jurisdiction over a foreign association, since 'an arbitration award cannot be enforced without access to the courts.'") (citation omitted).

*See also McDermott Int'l, Inc. v. Lloyd's Underwriters of London*, 944 F.2d 1199 (5th Cir. 1991); *Hart v. Orion Ins. Co.*, 453 F.2d 1358 (10th Cir. 1971); *NECA Ins. Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn.*, 595 F.Supp. 955 (S.D.N.Y. 1984).

Redmon asserts that judicial economy will be served by simultaneously disposing of the defendants' Motion to Compel Arbitration and Redmon's claim for declaratory relief.  However, Redmon also claims that his right for "judicial redress" will be denied if he is not allowed to conduct an evidentiary hearing on the merits of his claim.  The Court cannot agree with this contention. Redmon's claim for declaratory judgment is based solely on a question of law – *i.e.*, whether the service of suit clause is inconsistent with the arbitration clause in the insurance policies in question. Both sides have briefed the issue and this Court finds no need for an evidentiary hearing in order to make an informed and considered ruling.  Having considered the legal arguments, the Court finds that an evidentiary hearing is not warranted, and Redmon's Motion for an Evidentiary Hearing and Motion for Discovery are due to be denied.  With respect to Redmon's claim for a declaratory judgment, the Court finds that the service of suit clause contained in the insurance policies is not inconsistent with the arbitration clause, and therefore does not invalidate the arbitration clause.

2.     *Motion to Compel Arbitration*

Certain Underwriters and Petersen International allege in their Motion to Compel Arbitration and accompanying Memorandum of Support that the arbitration clause entered into by Redmon, Certain Underwriters and Petersen International is binding and should be enforced.   Certain Underwriters and Petersen International assert that the clause "is broad, and is designed to encompass all disputes that develop and/or exist between the parties, particularly those disputes delineated in Redmon's Amended Complaint." (Doc. # 7 p. 3).  Certain Underwriters and Petersen

International cite both the Federal Arbitration Act and Supreme Court precedent in support of this assertion. *See* 9 U.S.C.A. § 1 *et seq. See also Volt Information Sciences, Inc. v. Bd. of Trustees of the Leeland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989) ("[D]ue regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolve in favor of arbitration.").

Redmon counters that there are exceptions to the federal policy favoring arbitration, and cites two Supreme Court cases in support of this position. Redmon's argument is largely based on the language of *AT & T Tech., Inc. v. Communications Workers of Am.* and *Howsam v. Dean Witter Reynolds, Inc.*; these are cases that clarify when a "question of arbitrability" should be a question for the court, and not an issue subject to arbitration. *See AT & T Tech., Inc.*, 475 U.S. at 649; *Howsam*, 537 U.S. at 83-84. The examples of questions of arbitrability cited by the Court in *Howsam* are clearly distinguishable from the present case: Whether parties who did not sign an arbitration agreement can be bound by that agreement; whether the corporation resulting from a merger can be bound by an arbitration agreement signed by one corporation before the merger; or whether an agreement to arbitrate various "grievances" applies to claims of breach of a no-strike agreement. *Howsam*, 537 U.S. at 84. These examples involve questions regarding which parties are bound by a particular agreement and the scope of the agreement in question.

In the present case, there is no dispute that Redmon, Certain Underwriters and Petersen International agreed to the arbitration clause in question, and that the clause states that "any dispute which arises shall be settled in Binding Arbitration." Therefore, there are no "questions of arbitrability" similar to those the Court recognized in *Howsam*. In this case, the parties knowingly signed an arbitration agreement which covers the Redmon's claims; there are no other "questions

17

of arbitrability" for this Court to decide.

Finally, Redmon argues that his claims are outside what is "reasonably contemplated" by the arbitration clause. Redmon asserts that Certain Underwriters and Petersen International have refused to pay Redmon's claims because of alleged solvency issues and underwriting losses on the part of Certain Underwriters and Petersen International to which Redmon vaguely refers. Redmon cites no specific facts or sources to more firmly establish his factual allegations, nor does he cite any case law to support this position. The reasons for non-payment of claims are to be presented in arbitration. The Court is not persuaded that Redmon has adequately asserted any claims not contemplated by the arbitration agreement.

Redmon's claims against Certain Underwriters and Petersen International are therefore due to be arbitrated.

### 3.     *Motion to Stay Action*

According to the Federal Arbitration Act, this Court is required to issue a stay of proceedings when a case is referred to arbitration. *See* 9 U.S.C.A. § 3. Redmon's claims against Certain Underwriters and Petersen International, therefore, must be stayed pending the outcome of arbitration.

As Certain Underwriters and Petersen International point out, this court has discretionary power to stay proceedings against other defendants who are not parties to the arbitration, as well. Redmon concedes this is the case. *See Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004) ("When confronted with litigants advancing both arbitrable and nonarbitrable claims, however, courts have discretion to stay nonarbitrable claims") (citing *Moses H. Cone Mem. Hosp.*, 460 U.S. at 21 n.23). Redmon's claims against all defendants are due to be stayed.

18

C.   *Arbitration Issues Related to Lloyd's, IRMG and RAS.*

Although Lloyd's, IRMG and RAS were not signatories to the arbitration agreement between Redmon, Certain Underwriters and Petersen International, they have filed motions to compel arbitration (Doc. # 6 and Doc. # 46).  Pursuant to a theory of estoppel, a non-signatory may enforce an arbitration provision for "claims that are so intimately founded in and intertwined with the claims made by the party resisting arbitration against a party that is a signatory to the contract."  *South Ala. Pigs,* 305 F.Supp. at 1263 (citing *Ex parte Stamey*, 776 So.2d 85, 89 (Ala. 2000)).  Thus, the focus of Lloyd's, IRMG and RAS's arbitration issues is whether the scope of the arbitration provision encompasses the type of claims Redmon asserts and the relation between the claims and the arbitration contract.  *Id*. at 1264.

1.   *Scope of the Arbitration Clause*

As in *South Alabama Pigs*, the arbitration clause in the instant action is extremely broad.  The arbitration clause states that "any dispute which arises shall be settled in Binding Arbitration."  No restrictions are placed on the claims that may be arbitrated.  Thus, the breadth of the arbitration provision compares favorably with arbitration provisions in other cases where non-signatories were allowed to enforce the arbitration clause under an equitable estoppel theory.  *See id*; *see also Ex parte Napier*, 723 So.2d 49, 51 (Ala. 1998) ("All disputes, claims or controversies arising from or relating to this Contract or the relationships which result from this Contract, or the validity of this arbitration clause or the entire Contract, shall be resolved by binding arbitration."); *Stamey*, 776 So.2d at 88 ("All disputes, claims or controversies arising from or relating to this contract or the parties thereto shall be resolved by binding arbitration.").

In the Fourth Amended Complaint, Redmon makes the same allegations against all

defendants: breach of contract, fraud and misrepresentation, bad faith, tort of outrage, declaratory judgment, and trover and conversion.  Separately, Redmon claims Lloyd's negligently supervised Certain Underwriters.  The negligent supervision claim, as discussed *infra*, arose from and depends upon the insurance contract.  Accordingly, because all of Redmon's claims against Lloyd's, IRMG and RAS arose from the insurance contract, this Court finds that the arbitration provision in the instant action is sufficiently broad to encompass Redmon's claims against Lloyd's, IRMG and RAS.

 2. *Relation Between Claims Against Certain Underwriters and Lloyd's*.

 Lloyd's argues that Redmon's claims against it are so intertwined with the claims against Certain Underwriters that they should be compelled to arbitration along with Certain Underwriters' claims.  In Alabama, pursuant to equitable estoppel, "a non-signatory may enforce an arbitration provision for 'claims that are so intimately founded in and intertwined with the claims made by the party resisting arbitration against a party that is a signatory to the contract." *South Ala. Pigs* at 1263.

 Redmon claims that Count VII — negligent supervision — of the Fourth Amended Complaint bears no relation to the claims asserted against Certain Underwriters (breach of contract, fraud and misrepresentation, bad faith, the tort of outrage, trover and conversion); thus the claim is not subject to arbitration.  However, as Lloyd's points out, an indispensable element of a negligent supervision claim is proof that the purported agent committed an underlying wrong.  *See University Federal Credit Union v. Grayson*, 878 So.2d 280, 291 (Ala. 2003) (citing *Voyager Ins. Co. v. Whitson*, 867 So.2d 1065, 1073 (Ala. 2003) (noting that a "party alleging negligent supervision and hiring must prove the underlying wrongful conduct of the defendant's agents.")).  A negligent supervision claim requires analysis of the conduct of Certain Underwriters to determine the wrongdoing of Lloyd's.  Thus, the negligent supervision claim is sufficiently intertwined with the

claims against Certain Underwriters as to mandate arbitration.

D.    *Rule 11 Sanctions*

Redmon has earnestly and repeatedly (Docs. # 29, 36, 41, 58, 69 & 79) faulted the State Court Defendants for attempting to mislead the Court by representing disputed facts as being undisputed in the State Court Defendants' brief (Doc. #27).   The parties have been unable to resolve this collateral dispute.   Redmon seeks Rule 11 sanctions, insisting that he would be "severely prejudiced and the interest of justice would not be served" by the Court's reliance on materially false information submitted by the State Court Defendants (Doc. # 36).   In view of the seriousness of the allegations made by Redmon, the integrity of the judicial process is to be zealously protected by a careful review of his charges.

Redmon challenges the State Court Defendants' claims (Doc. # 27) that the disability policies are not "currently in effect;" that policy No. 003517 lapsed for non-payment of premium; that Redmon was not released by the Falcons due to a shoulder injury; and that David Radazewski is not a team physician for the Falcons.[11]   By making these statements, and referring to them as "undisputed," Redmon charges the State Court Defendants with "fabrications designed to mislead the Court" (Doc. # 29); representations of key material facts as "false and misleading" (Doc. #29); "total misrepresentations and fabrications" (Doc. #30); mis-characterization and misrepresentation (Doc. #30); and presenting patently false information "before the Court with the intent of misleading the Court on major dispositive issues" (Doc. # 58).   Redmon boldly states that "the allegations and other factual contentions have absolutely no evidentiary support . . . ."  (Doc. # 69 ¶ 4).

---

[11]   The allegations are addressed only in the context of whether they were made for any improper purpose (Rule 11(b)(1)), or were frivolous (Rule 11(b)(2)(3) & (4)).  At this juncture, the ultimate truth or falsity of the underlying facts is not being examined.

The State Court Defendants strongly refute the sanctions motion and join issue on each challenged statement.  Attached to the response of the State Court Defendants are exhibits which, suffice to say, establish at least a factual basis for their claim that one of the policies lapsed for non-payment of premiums and that the Falcons knew nothing of Redmon's shoulder injury.[12]  The statement that the policies "are no longer in effect" is semantic; in fact, the policies were in force for a fixed period of time by their terms, and those periods of time have expired.  The State Court Defendants have not taken the position that the policies never existed; indeed, they rely on the terms of the policies in asking for arbitration.

As to the alleged shoulder injury, the State Court Defendants produced a sworn release *signed by Redmon* stating that his August 14, 2001 release by the Falcons was because of a knee injury (which is excluded in the Policies) and the need for the Falcons "to make room for another player they are bringing in."  (Doc. # 71, Ex. H.)  There was no mention by Redmon of a shoulder injury.[13]

Whether Dr. Radazewski, a chiropractor, is or was a team physician for the Falcons is immaterial at this point in the proceedings.  It is certainly not a dispositive issue, and appears to turn on the technical definition of "physician."

Redmon's stated purpose in filing the Rule 11 motion is to protect the Court from a "fraud upon the court by having it rely on said representations and thereupon grant the State Court Defendants' Motion to Compel Arbitration."  (Doc. # 69 ¶ 3.)  In fact, none of the alleged fraudulent

---

[12]  For purposes of the Rule 11 motion, the Court considers exhibits submitted by the parties.

[13]  It is the vehement contention of Redmon that his shoulder was in fact injured, and he will apparently be able to provide proof of his injury.  However, it is not in the province of this Court to address the underlying facts until gateway issues are resolved, and then only if arbitration is not appropriate.

misrepresentations are remotely connected to the gateway issues of arbitration or jurisdiction. Assuredly, even if the allegations were patently false, the Court would not be relying upon them for any purpose related to the gateway issues. In short, Redmon's motion for Rule 11 sanctions is clearly not well-taken, and is due to be denied.[14]

## VI.   CONCLUSION

For the foregoing reasons, it is hereby ORDERED that:

1. Council Members' Motion to Dismiss (Doc. # 48) is GRANTED with prejudice.

2. Plaintiffs' Motions for an Evidentiary Hearing (Docs.# 29 and 36) are DENIED.

3. Plaintiffs' Motion for Discovery (Doc. # 36) is DENIED.

4. The State Court Defendants' Motion to Compel Arbitration (Doc. # 6) is GRANTED.

5. The State Court Defendants' Motion to Stay Action Pending Arbitration (Doc. # 4) is GRANTED.

6. Lloyd's Motion to Compel Arbitration (Doc. # 46) is GRANTED.

7. Redmon's Motion to Set Deadline for Responding to Motion to Compel (Doc. # 50) is DENIED as moot.

8. Council Members' Motion for Extension of Time to File Response (Doc. # 54) is DENIED as moot.

---

[14] Defendants request attorney fees and costs associated with resisting the Rule 11 motion, but have not filed a counter-motion for sanctions. Exhibits provided to the Court document the good faith efforts of the Lloyd's defendants to resolve the Rule 11 dispute and Redmon's resistance to those efforts. While the Court is not unsympathetic to the plea of the defendants, the Court is also aware of Redmon's dissatisfaction with the pace of the proceedings in this case. Inasmuch as the filing of the Rule 11 motion has further delayed disposition of the gateway issues, and ultimately, the case, the Court will deny Redmon's Rule 11 motion as well as the fee and expense request of the defendants.

9.  Redmon's Motion for Hearing and Oral Argument (Doc. # 58) is DENIED.

10.  Lloyd's Motion to Strike Plaintiff's Third Response to Lloyd's Motion to Compel (Doc. # 61) is DENIED.

11.  Redmon's Motion for Sanctions (Doc. # 69) is DENIED.

12.  Redmon's Motion to Strike Exhibit (Doc.# 79) is DENIED.

13.  The parties to this action are hereby ORDERED to submit all controversies, claims, or disputes between them to arbitration in accordance with the terms of the agreement between them.

14.  The parties are hereby ORDERED to file a jointly prepared report on the status of this case.  The first such report shall be filed on August 7, 2006, and the parties shall thereafter file a jointly prepared report on the first Monday of every month until such time as the parties jointly stipulate that this action can be dismissed, or until further action is required of this Court. The jointly prepared report shall indicate the status of the arbitration proceedings and the expected date those proceedings will be concluded.

Done this 15th day of June , 2006.


_____/s/   W.  Keith Watkins_____
UNITED STATES DISTRICT JUDGE

**<u>Appendix A - Pending Motions</u>**

[1] Motion to Stay Action Pending Arbitration (Doc. # 4) and [2] Motion to Compel Arbitration (Doc. # 6), both filed by London Underwriters, Michael B. Petersen, Petersen Underwriters, Inc., Carney, Gleason & Carney Ltd d/b/a International Risk Management Group, and Rehabilitation Alternative Services, Inc. on April 26, 2005; [3] Motion for an Evidentiary Hearing (Doc. # 29), originally filed by plaintiffs on July 25, 2005;  [4] Motion for Discovery (Doc. # 36) filed on August 8, 2005, when plaintiffs submitted a supplemental Motion for an Evidentiary Hearing (Doc. # 36); [5] Motion to Dismiss/Compel Arbitration of Claims Asserted Against Society and Corporation of Lloyd (Doc. # 46); [6] Motion to Dismiss Individual Defendants Added Via the Fourth Amended Complaint (Doc. # 48); [7] Motion to Set Deadline for Responding to Motion to Compel (Doc. # 50); [8] Motion for Extension of Time to File Response (Doc. # 54); [9] Motion for Hearing and Oral Argument (Doc. # 58); [10] Motion to Strike Plaintiff's Third Response to Lloyd's Motion to Compel (Doc. # 61); [11] Motion for Rule 11 Sanctions (Doc. # 69); and [12] Motion to Strike Exhibit attached to Defendants' Memorandum in Opposition to Motion for Sanctions (Doc. # 79).